# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

ADMASSU REGASSA, )
No. 09303-007, )
 )
        Plaintiff, )
 )
vs. ) Case No. 17-cv-999-JPG
 )
K. SANDERS, et al., )
 )
        Defendants. )

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff Admassu Regassa, presently incarcerated at the United States Penitentiary in Petersburg, Virginia, brings this *pro se* action for deprivations of his constitutional rights by persons acting under the color of federal authority pursuant to *Bivens v. Six Unknown Agents of the Bureau of Narcotics*, 403 U.S. 388 (1971). Plaintiff also references the Federal Torts Claims Act, 28 U.S.C. §§ 1346, 2671-2680 and tort law. Plaintiff's claims pertain to his prior incarceration at the United States Penitentiary in Marion, Illinois ("USP-Marion").

Plaintiff's original 87-page Complaint, which included 214 pages of exhibits and directed claims against 116 defendants at three different institutions, did not survive preliminary review. (Doc. 14). Thereafter, Plaintiff timely filed a First Amended Complaint. (Docs. 16 and 16-1). Although the amended pleading appears to limit Plaintiff's claims to a single institution (USP-Marion), the 91-page complaint,[1] which includes 428 pages of exhibits and directs claims against 88 defendants, suffers from the same deficiencies as the original Complaint.

This case is now before the Court for a preliminary review of the First Amended

---

[1] A total of 31 are devoted to identifying the 88 defendants (Doc. 16, pp. 1-31); 2 pages are devoted to describing Plaintiff's prior lawsuits and grievance history (Doc. 16, pp. 32-33); and 58 pages are devoted setting forth Plaintiff's statement of claim and request for relief (Doc. 16, pp. 34-45 and Doc. 16-1, pp. 1-46).

Complaint pursuant to 28 U.S.C. § 1915A. Under § 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). The Court must dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). In addition, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). *See also Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements").

In order to state a claim, a complaint must also comply with Rule 8 by providing "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Moreover, "[e]ach allegation must be simple, concise, and direct." FED. R. CIV. P. 8(d)(1). The primary purpose of these pleading requirements is to give defendants fair notice of the claims against them and the grounds supporting the claims. *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). *See also United States ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003) ("Rule 8(a) requires parties to make their

pleadings straightforward, so that judges and adverse parties need not try to fish a gold coin from a bucket of mud.").

"[U]ndue length alone ordinarily does not justify the dismissal of an otherwise valid complaint." *Standard v. Nygren*, 658 F.3d 792, 797 (7th Cir. 2011). However, "[l]ength may make a complaint unintelligible[ ] by scattering and concealing in a morass of irrelevancies the few allegations that matter." *United States ex rel. Garst v. Lockheed–Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003). "Again, the issue is notice; where the lack of organization and basic coherence renders a complaint too confusing to determine the facts that constitute the alleged wrongful conduct, dismissal is an appropriate remedy." *Standard*, 658 F.3d at 798. For example, in *Garst*, the Seventh Circuit "affirmed the dismissal of a 155-page, 400-paragraph complaint that would have forced the defendants to spend countless hours 'fishing' for the few relevant allegations." *Id.* citing *Garst,* 328 F.3d at 378. Thus, a complaint is appropriately dismissed if it presents a "vague, confusing, and conclusory articulation of the factual and legal basis for the claim and take[s] a general 'kitchen sink' approach to pleading the case. Such complaints frustrate Rule 8's objective: 'framing the issues and providing the basis for informed pretrial proceedings.' " *Cincinnate Life Ins. Co. v. Beyrer*, 722 F.3d 939, 946-47 (7th Cir. 2013) (quoting *Stanard*, 658 F.3d at 797-98) (internal brackets omitted). *See also Kadamovas v. Stevens*, 706 F.3d 843, 844 (7th Cir. 2013) ("District judges are busy, and therefore have a right to dismiss a complaint that is so long that it imposes an undue burden on the judge, to the prejudice of other litigants seeking the judge's attention.").

<u>**Original Complaint**</u>

In dismissing Plaintiff's original Complaint, the Court explained why Plaintiff's claims failed to meet basic pleading requirements:

> The allegations in the Complaint refer to a broad range of claims with little or no elaboration. Often, the allegations are little more than conclusory legal statements and vague references to constitutional violations. In most instances, Plaintiff generally claims that large groups of individuals are subject to liability for violating his rights, but fails to describe how each individual was personally involved in the alleged violation. This style of pleading violates Rule 8. *See Vicom, Inc. v. Harbridge Merch. Serv., Inc.,* 20 F.3d 771, 775–76 (7th Cir.1994) (quoting *Wade v. Hopper,* 993 F.2d 1246, 1249 (7th Cir.) (citations omitted), *cert. denied,* 510 U.S. 868 (1993)) ("Under Rule 8, a complaint 'must be presented with intelligibility sufficient for a court or opposing party to understand whether a valid claim is alleged and if so what it is.' "). Moreover, even when specific conduct is associated with specific individuals, the allegations fall short of stating a constitutional violation.
>
> The Complaint is also problematic under Rule 8 for its length (87 typewritten pages and 214 pages of exhibits) and impractical number of defendants (116). Here, the length of the Complaint is problematic because the few potentially viable allegations are scattered and concealed in "a morass of irrelevancies," making the Complaint unintelligible. *See United States ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003).
>
> Given the above pleading deficiencies, the Court cannot discern what claims are being asserted as to each of the 116 defendants.

(Doc. 14, p. 9).

### **First Amended Complaint**

The First Amended Complaint suffers from the same infirmities as the original Complaint. It consists of 91 cramped handwritten pages, directs claims against 88 defendants, and is accompanied by 428 pages of exhibits. As with the original Complaint, Plaintiff continues to employ the "kitchen sink" approach to pleading, setting forth just about every slight he allegedly suffered during his tenure at USP-Marion. The factual and legal grounds for Plaintiff's claims are presented in a confusing and conclusory manner. This, combined with the pleading's undue length and rampant irrelevancies, renders the First Amended Complaint too confusing to provide the requisite fair notice.

Plaintiff repeatedly alleges that all defendants or large groups of defendants were

involved in a conspiracy to harass, discriminate against, and/or retaliate against him. However, these conclusory claims fail to articulate, in a straight forward manner, how each individual defendant violated Plaintiff's constitutional rights. For instance, Plaintiff alleges that as he continued to file grievances pertaining to the conditions of his confinement, "several federal employees of the BOP…highly intensified their discrimination against [him] and employed corrupt and malicious and abusive and manipulative and oppressive and discriminatory bureaucratic tactics and policies and practices against [him] and kept victimizing [him] under cruel and unusual punishment conditions of confinement and ruthless tyranny." (Doc. 16, pp. 41-42). In connection with this claim, Plaintiff identifies approximately 70 defendants without providing any facts regarding how each defendant allegedly violated his constitutional rights. *Id*. Plaintiff also claims that all of the defendants identified in the First Amended Complaint have "in some form or fashion expressed ordinary negligence or deliberate indifference towards [him] and inflicted deep traumatic emotional distress upon [him] and seriously violated some of [his] fundamental constitutional rights." (Doc. 16, p. 42). Once again, Plaintiff does not include facts describing how each of the defendants allegedly violated his rights.

Presumably, Plaintiff expects the Court and the opposing parties to dig through his 91-page pleading (and 428 pages of exhibits) to locate factual allegations suggesting that individual defendants harassed, discriminated against, retaliated against, and/or exhibited deliberate indifference towards Plaintiff (or otherwise violated Plaintiff's rights). The Court has spent countless hours attempting to do just that. But, the dozens of possible claims Plaintiff is attempting to pursue are lost in a sea of rambling irrelevancies. Consider the following excerpts:

> I had three heavy bags and a legal box that consisted of my personal property and legal documents. Since I cannot carry all of the three bags and the legal box by myself, I left my property in the West Corridor next to the entrance to the SHU and started walking to my unit to get some cart or to ask some inmates from my

5

unit (F-Unit) to help me to carry some of my personal property. On that day, Ms. R. Crouch was a corridor officer, and she stopped me and asked me why I left my property at the entrance to SHU. I explained to her that since the three bags and the legal box are too heavy, I will first go to my unit and get a cart or other inmates to help me. Then, after I carried my property to my unit with the help of two inmates, I reported to the captain's office. As soon as he saw me, Captain Lepe was extremely furious at me and said to me, "How dare you ask my female officer to carry your property for you to your unit!" I was very astonished, but I was also very fearful, nervous, worried, anxious, and stressed out by the Captain's sudden and unexpected and eventful confrontation. Then the Captain ordered me to take a seat, and he himself took a seat in front of his computer and kept me waiting for a very prolonged time without uttering a word as I furtively took glances from one corner to another corner of his spacious and lavishly furnished office, quietly and silently admiring some of the most beautiful sports memorabilia, numerous trophies from the Oakland Raiders NFL team, fancy artifacts, genuinely interesting personal gifts and variety of certificates of recognition accomplishment, and appreciation that systematically symmetrically and elegantly adorned every parcel of his office wall and floor. Then, after a long wait, the Captain got up from his seat and stood in front of me and barked an order at me.

(Doc. 16, p. 45; Doc. 16-1, p. 1).

On November 30, 2016, Ms. Murphy was working as a correctional officer in F-Unit during day watch. Since I am a unit orderly, I stay in the unit during work hours unless I go to law library or rec yard or SOTP-R group meeting. On the stated date, I borrowed [an] iron and ironing board with my ID card. After I returned the iron and the ironing board, I also used a stapler in the office and took some blank copout forms also from the office. Before Ms. Murphy came to work, I also borrowed a spray bottle with my ID card from Ms. Emily Cimino to clean the shower, and before I returned the spray bottle to the office, the shift changed and Ms. Emily Cimino went home and Ms. Murphy took her place, so I also returned the spray bottle to Ms. Murphy and took my ID card. On the same date (11-30-16) around 3:30 pm. Lt. J. McMilon came to my cell #F03-006 and said to me "Let's go!" I said, "Where?" He said, "The Doctor says you got to go!" Referring to Dr. J. Novotney then, Dr. Novotney and Lt. McMilon took me to the psychology office in F-Unit and interrogated me and asked me several questions and seriously threatened me to send me to the SHU. I explained to them that I did not do anything wrong other than legitimately borrowing and using certain items that are issued to inmates from the officer station by placing ID cards in the office until the borrowed items are returned such as the iron, ironing, board, stapler, spray bottle, and blank copout forms (NOID cards are needed for the latter item). That episode was another clear demonstration of how the lieutenants and SOTP-R psychologists systematically utilize female staff members as the most effective means of retaliation and conspiracy & discrimination & a campaign of harassment against me and as an excuse to justify the undue restrictions that were placed upon

6

me such as correctional management plan (CMP) and telephone and TRULINCS/email restrictions.

(Doc. 16-1, p. 8).

The First Amended Complaint is rife with this type of pleading; burying potential claims in a mountain of excessive prose and irrelevancies. Thus, if Plaintiff has included any factual allegations that have merit, they are buried in pages and pages of legal conclusions, confusing and disjointed factual allegations, and irrelevant prose.

In addition to the deficiencies identified above, it appears that Plaintiff is attempting to bring unrelated claims against different groups of defendants. The potential claims involve, but are not limited to, outgoing mail (legal and non-legal), phone and TRULINCS/e-mail privileges, employment opportunities, disciplinary charges, retaliation, discrimination, conspiracy, harassment, access to the courts, deliberate indifference to medical needs, and due process. The claims are directed against mailroom staff, administrative officials, correctional officers, counselors, physicians, and mental health professionals.

Federal Rule of Civil Procedure 18(a) allows a plaintiff to "put in one complaint every claim of any kind against a single defendant," but a plaintiff may "present claim # 1 against Defendant A, and claim # 2 against Defendant B, only if both claims arise 'out of the same transaction, occurrence, or series of transactions or occurrences.' Rule 20(a)(1)(A)." *Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 683 (7th Cir. 2012). "A litigant cannot throw all of his grievances, against dozens of different parties, into one stewpot." *Id.* (citing *George v. Smith*, 507 F.3d 605 (7th Cir. 2007)).

In the instant case, Plaintiff appears to have done what the Seventh Circuit, and Rules 18 and 20 of the Federal Rules of Civil Procedure, state he cannot do—collect a series of differing allegations against a variety of defendants and put them all in one complaint. The Court is

permitted to sever unrelated claims into separate actions (charging a separate filing fee for each severed action). However, the First Amended Complaint is so unwieldy; it is impossible for the Court to sever the action in accord with the applicable rules. Plaintiff attempts to connect the largely unrelated claims under the umbrella of an overarching conspiracy. But these claims, which consist of nothing more than legal conclusions, are insufficient. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

For the reasons discussed above, The Court finds that the First Amended Complaint does not come close to complying with Rule 8 or to providing Defendants with the requisite fair notice. Accordingly, the Court finds that the identified pleading deficiencies warrant dismissal. *See Kadamovas v. Stevens*, 706 F.3d 843, 844 (7th Cir. 2013) ("District judges are busy, and therefore have a right to dismiss a complaint that is so long that it imposes an undue burden on the judge, to the prejudice of other litigants seeking the judge's attention."); *United States ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003) ("[L]ength may make a complaint unintelligible, by scattering and concealing in a morass of irrelevancies the few allegations that matter."); *Garst*, 328 F.3d at 378 ("[J]udges and adverse parties need not try to fish a gold coin from a bucket of mud.); *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 947 (7th Cir. 2013) ("[D]ismissal is the appropriate remedy for district courts presented with 'a bucket of mud.' ") (quoting *Garst*, 328 F.3d at 378).

Plaintiff shall be granted **<u>one final opportunity</u>** to correct the deficiencies identified herein. Plaintiff's Second Amended Complaint must set forth "a short and plain statement" of Plaintiff's claims as is required by Rule 8(a)(2), so that Defendants are provided with fair notice of the claims against them. If the Second Amended Complaint does not comply with Rule 8 or with the instructions below, if it fails to state a claim, or if Plaintiff does not submit an amended

complaint, **the entire case shall be dismissed with prejudice**.  Such a dismissal will count as a strike pursuant to § 1915(g).

## Disposition

**IT IS HEREBY ORDERED** that the First Amended Complaint (Doc. 16 and Doc. 16-1) is **DISMISSED** without prejudice for noncompliance with Rule 8 of the Federal Rules of Civil Procedure and for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that, should he wish to proceed with this case, Plaintiff shall file a Second Amended Complaint within 28 days of the entry of this order (**May 24, 2018**). Should Plaintiff fail to file his Second Amended Complaint within the allotted time or consistent with the instructions set forth in this Order, the entire case shall be dismissed with prejudice for failure to comply with a court order and/or for failure to prosecute his claims.  FED. R. APP. P. 41(b).  *See generally Ladien v. Astrachan*, 128 F.3d 1051 (7th Cir. 1997); *Johnson v. Kamminga*, 34 F.3d 466 (7th Cir. 1994); 28 U.S.C. § 1915(e)(2).  Such dismissal shall count as one of Plaintiff's three allotted "strikes" within the meaning of 28 U.S.C. § 1915(g) because he has yet to state a claim upon which relief may be granted.

Should Plaintiff decide to file a Second Amended Complaint, it is strongly recommended that Plaintiff use the form designed for use in this District for civil rights actions.  He should label the pleading "Second Amended Complaint" and include Case Number 17-cv-999-JPG. The Second Amended Complaint should set forth a short and plain statement of Plaintiff's claims.  Moreover, each allegation should be simple, concise, and direct.  Plaintiff should attempt to include the facts of his case in chronological order, inserting Defendants' names where necessary to identify the actors and the dates of any material acts or omissions.  Plaintiff should *include only related claims* against common defendants in his new complaint.  Claims

found to be unrelated against different defendants will be severed into new cases, new case numbers will be assigned, and additional filing fees will be assessed.

An amended complaint supersedes and replaces the original Complaint, rendering the original Complaint void. *See Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 638 n.1 (7th Cir. 2004). The Court will not accept piecemeal amendments to the original Complaint. Thus, the Second Amended Complaint must contain all the relevant allegations in support of Plaintiffs' claims and must stand on its own, without reference to any other pleading.

No service shall be ordered on any defendant until after the Court completes its § 1915A review of the Second Amended Complaint.

In order to assist Plaintiff in preparing his amended complaint, the Clerk is **DIRECTED** to mail him a blank civil rights complaint form.

Finally, Plaintiff is **REMINDED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 7 days after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P 41(b).

**IT IS SO ORDERED.**

**DATED: April 26, 2018**

                                                  **s/J. Phil Gilbert**
                                                  **U.S. District Judge**