IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

ADMASSU REGASSA,  )
No. 09303-007,  )
  )
        Plaintiff,  )
  )
vs.  )  Case No. 17-cv-999-JPG
  )
K. SANDERS, et al.,  )
  )
        Defendants.  )

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff Admassu Regassa, presently incarcerated at the United States Penitentiary in Petersburg, Virginia, brings this *pro se* action for deprivations of his constitutional rights by persons acting under the color of federal authority pursuant to *Bivens v. Six Unknown Agents of the Bureau of Narcotics*, 403 U.S. 388 (1971).

Plaintiff's Second Amended Complaint (Doc. 29) is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. The Second Amended Complaint pertains to Plaintiff's prior incarceration at the United States Penitentiary in Marion, Illinois ("USP-Marion"). While incarcerated at USP-Marion, Plaintiff was in the Sex Offender Management Program ("SOMP") and was a participant in the Sexual Offenders Treatment Program ("SOTP"). According to Plaintiff, approximately 60 different officials repeatedly subjected him various restrictions and punishments (e.g., limited or no access to TRULINCS, USP-Marion's electronic public messaging service; requiring preapproval for outgoing mail; limiting telephone, commissary, and visitation privileges; placing Plaintiff on a Correctional Management Plan ("CMP"); and periodically detaining Plaintiff in the Special Housing Unit ("SHU")). Defendants allegedly

1

subjected Plaintiff to these restrictions and/or punishments not because of his status as a sex offender or because of his misconduct while incarcerated at USP-Marion, but because of a vast conspiracy to retaliate and/or discriminate against him.

**Background**

Plaintiff's original 87-page Complaint, which included 214 pages of exhibits and directed claims against 116 defendants at three different institutions, did not survive preliminary review. (Doc. 14). The Complaint was filled with sketchy and conclusory allegations. Moreover, the few allegations that mattered were "scatter[ed] and conceal[ed] in a morass of irrelevancies." *United States ex rel. Garst v. Lockheed–Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003).

Thereafter, Plaintiff timely filed a First Amended Complaint. (Docs. 16 and 16-1). Although the First Amended Complaint limited Plaintiff's claims to a single institution (USP-Marion), it was 91 pages, included 428 pages of exhibits, directed claims against 88 defendants, and suffered from the same deficiencies as the original Complaint. Accordingly, it was also dismissed. (Doc. 27). However, the dismissal was without prejudice and with leave to amend. *Id.*

**Screening Standard**

The review standard under § 1915A is the same as the notice pleading standard under Federal Rule of Civil Procedure 12(b)(6). *Zimmerman v. Tribble*, 226 F.3d 568, 571 (7th Cir. 2000). To state a claim, the allegations must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Factual allegations must give enough detail to give " 'fair notice of what the ... claim is and the grounds upon which it rests.' " *EEOC v. Concentra Health Serv., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) (add'l citation omitted)). The factual

"allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level.' " *Id*. (quoting *Bell Atlantic*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged....Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)(citing *Bell Atlantic*, 550 U.S. at 555–56).

*Pro se* pleadings are liberally construed when applying this standard. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). However, a court should not allow defendants to be subjected to "paranoid *pro se* litigation ... alleging ... a vast, encompassing conspiracy" unless plaintiff meets a "high standard of plausibility." *Cooney v. Rossiter*, 583 F.3d 967, 971 (7th Cir. 2009); *see also Walton v. Walker*, 364 F. App'x. 256, 258 (7th Cir. 2010).

## **Discussion**

The Second Amended Complaint suffers from many of the same problems as the prior pleadings. It consists of 55 handwritten pages, directs claims against 60 defendants, and is accompanied by 298 pages of exhibits. As with prior complaints, Plaintiff continues to employ the "kitchen sink" approach to pleading, referencing just about every slight he allegedly suffered during his tenure at USP-Marion. Significant portions of the Second Amended Complaint are nothing more than legal conclusions couched as factual allegations and/or threadbare recitals of the elements of a cause of action supported by mere conclusory statements. For instance, Plaintiff repeatedly claims, in a conclusory manner, that various officials conspired to retaliate and/or discriminate against him. Such allegations are not entitled to an assumption of truth. S*ee Iqbal*, 556 U.S. at 678–79 (citing *Twombly*). The Court will not delve into each and every conclusory allegation in the Second Amended Complaint. It will simply state that the numerous

3

allegations pertaining to a vast conspiracy to violate Plaintiff's constitutional rights are not enough to withstand the standard established by *Twombly/Iqbal* and are therefore dismissed. Plaintiff's remaining claims are addressed in turn below.

**Access to the Courts**

Plaintiff attempts to bring two access to the courts claims. The first claim relates to restrictions on Plaintiff's outgoing mail. (Doc. 29, p. 38). According to the Second Amended Complaint, Plaintiff was required to affix preapproved mailing labels to all of his outgoing mail (a restriction apparently related to his status as a sex offender). *Id.* According to Plaintiff, mailroom employees refused to mail "some" of his legal mail because it did not have an approved mailing label. *Id.* On one occasion, when Plaintiff complained about the restriction, a mailroom employee threatened to send Plaintiff to the SHU. Plaintiff, however, does not describe how the alleged conduct caused a detriment to his ability to pursue a claim or defense in court. Accordingly, these allegations do not state a claim for denial of access to the courts. *See Christopher v. Harbury,* 536 U.S. 403, 416 (2002); *Marshall v. Knight,* 445 F.3d 965, 968 (7th Cir. 2006).

The second access to the courts claim pertains to a civil rights action Plaintiff is presently pursuing the Middle District of Pennsylvania, regarding his prior confinement at the United States Penitentiary in Lewisburg, Pennsylvania (USP-Lewisburg"). *See Regassa v. Brininger,* 14-cv-1122-MWB-JVW. Plaintiff claims that, in order to successfully prosecute medical malpractice claims at issue in that action, he needs (or needed) a certificate of merit ("COM").[1] (Doc. 29, p. 44-45). Plaintiff alleges various officials at USP-Marion denied or ignored his

---

[1] Pennsylvania law requires a plaintiff alleging medical malpractice to file a COM. The certificate must attest either that an appropriate licensed professional supplied a written statement that there exists a reasonable probability that the care provided fell outside acceptable professional standards, or that expert testimony of an appropriate licensed professional is unnecessary. Pa. R. Civ. P. 1042.3(a)(1) & (3).

requests for a COM, failed to investigate his claims pertaining to medical malpractice at USP-Lewisburg, and/or failed to provide him with records supporting his medical malpractice claims. *Id.* According to Plaintiff, these actions constitute a denial of his right of access to the courts. *Id.* However, Plaintiff does not identify an actual injury; he does not state that any claims were dismissed because of the complained of conduct, and the medical malpractice action is presently pending. Moreover, Plaintiff is alleging that USP-Marion officials failed to help him investigate and prosecute his case against USP-Lewisburg officials. But, the right of access to the courts is not "an abstract freestanding right to…legal assistance." *Lewis v. Casey,* 518 U.S. 343, 351 (1996). The state has no duty to "enable the prisoner to discover grievances and to litigate effectively once in court." *Id*. at 354. (emphasis omitted). Accordingly, these allegations also fail to state a claim upon which relief may be granted.

For these reasons, Plaintiff's access to the court claims are subject to dismissal for failure to state a claim upon which relief may be granted.

**Due Process Claims**

Between late 2016 and June 2017, Plaintiff received several incident reports. (Doc. 29, pp. 35-36, 38-40, 42-43). In connection with these reports, Plaintiff was sanctioned with 60 days loss of TRULINCS privileges (September 2016), 90 days loss of TRULINCS privileges (November 2016), loss of telephone and commissary privileges (November 2017), 77 days in the SHU (November 2017), and 42 days in the SHU (June 2017). *Id.* Plaintiff claims that his due process rights were violated because the incident reports were false (allegedly based on misinformation, hearsay, gossip, and rumors) and/or because hearing officers used abusive language during his hearing. *Id.* He also claims that during the November 2017 hearing he was not allowed to call "some" of his witnesses. (Doc. 29, pp. 42-43).

Plaintiff's due process claims fail for two reasons. First, a false conduct report does not create a due process claim because the inmate has the ability to litigate the truthfulness of the report through the hearing process. *Lagerstrom v. Kingston*, 463 F.3d 621, 624–25 (7th Cir. 2006). Further, with the exception of only being allowed to call "some" witnesses at the November 2017 hearing, Plaintiff does not point to any irregularity suggesting a *Wolff*[2] violation. Second, even assuming there was a procedural due process violation, the punishments Plaintiff describes do not trigger due process concerns. The Second Amended Complaint does not suggest that the conditions Plaintiff endured during his confinement in the SHU (77 days in November 2017 and 42 days in June 2017) imposed an "atypical and significant hardship." Thus, as alleged, Plaintiff cannot sustain a due process claim with respect to his placement in the SHU. *See Sandin v. Conner*, 515 U.S. 472 (1995); *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697-98 (7th Cir. 2009); *Wagner v. Hanks*, 128 F.3d 1173, 1175 (7th Cir.1997). The remaining punishments (loss of various privileges) do not amount to a constitutionally significant deprivation of liberty. *See* e.g., *Thomas v. Ramos*, 130 F.3d 754, 762 n.8 (7th Cir. 1997) (and cases cited therein).

For these reasons, Plaintiff's due process claims are subject to dismissal for failure to state a claim upon which relief may be granted.

**Harassment**

Plaintiff claims that numerous officials harassed, embarrassed, and/or "verbally assaulted" him. (Doc. 29, pp. 35-36-37, 39, 41-43). But the conduct Plaintiff describes (e.g., rapping on Plaintiff's cell bars with a flashlight, "intentionally and provocatively" shining a flashlight into Plaintiff's cell, using inflammatory language, calling Plaintiff a pervert) do not

---

[2] Due process requires that an inmate facing a disciplinary hearing is given advance written notice of the charge, the right to appear before the hearing panel, the right to call witnesses if prison safety allows, and a written statement of the reasons for the resulting discipline. *Wolff v. McDonnell*, 418 U.S. 539, 563-69 (1974).

state a constitutional claim. *See Dobbey v. Ill. Dep't of Corr.*, 574 F.3d 443, 446 (7th Cir. 2009). *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000); *Beal v. Foster*, 803 F.3d 356, 358 (7th Cir. 2015).

For these reasons, Plaintiff's Eighth Amendment claims pertaining to harassment and verbal abuse are subject to dismissal for failure to state a claim upon which relief may be granted.

**Mishandling Grievances**

Plaintiff claims that numerous officials destroyed or mishandled his grievances. (Doc. 29, pp. 39-41, 45). But, the fact that prison officials denied, or even mishandled, grievances, standing alone, states no claim. "Prison grievance procedures are not mandated by the First Amendment and do not by their very existence create interests protected by the Due Process Clause" of the Fourteenth Amendment. *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011) (citations omitted). The Constitution requires no procedure at all, and the failure of state prison officials to follow their own procedures does not, standing alone, violate the Constitution. *Maust v. Headley*, 959 F.2d 644, 648 (7th Cir. 1992); *Shango v. Jurich*, 681 F.2d 1091, 1100–01 (7th Cir. 1982).

Accordingly, these claims are subject to dismissal for failure to state a claim upon which relief may be granted.

**Relaying "Misinformation"**

Plaintiff claims that, on June 28, 2017, two officials "disseminated misinformation and hearsay and gossip and rumors about [him] to other staff members and inmates," endangering Plaintiff's safety. (Doc. 29, p. 41). Harassment may become actionable where it involves a "credible threat to kill, or to inflict any other physical injury." *Dobbey v. Ill. Dep't of Corr.*, 574

7

F.3d 443, 446 (7th Cir. 2009). Allegations that a prison officer has provoked or persuaded other inmates to cause harm to a plaintiff support an inference that the officer attempted to inflict injury on the plaintiff in violation of the Eighth Amendment. *See Irving v. Dormire*, 519 F.3d 441, 449 (8th Cir. 2008) (officer's attempt to have other inmates attack plaintiff may violate Eighth Amendment, even where the plaintiff was not actually assaulted); *Northington v. Jackson*, 973 F.2d 1518, 1525 (10th Cir. 1992) (Eighth Amendment claim stated where guard "intended to do harm to [a prisoner] by inciting inmates to beat him[;]" guard told other inmates that plaintiff was a snitch).

Here, Plaintiff has failed to state a claim because his allegations are conclusory. He has not identified the specific threat or language used by the officials. He has not described the "misinformation" that was disclosed. He has not pleaded that he was actually harmed, and he has not provided any facts making it plausible that his fear of harm was legitimate. On these facts, it is not a reasonable inference that the officials intended to harm Plaintiff by inciting others to attack him. Accordingly, this claim does not meet the standards in *Iqbal* and *Twombly*, and is subject to dismissal for failure to state a claim upon which relief may be granted.

**Leave to Amend**

The failure of the Second Amended Complaint to state a colorable constitutional claim begs the question, should Plaintiff be given a third opportunity to plead his case? Leave to amend need not be granted when further amendment would be futile. *McCree v. Grissom*, 657 F.3d 623, 624 (7th Cir. 2011). "[F]utile repleadings include restating the same facts using different language, *Wakeen v. Hoffman House, Inc*., 724 F.2d 1238, 1244 (7th Cir. 1983), reasserting claims previously determined, *id*., failing to state a valid theory of liability, *Verhein v. South Bend Lathe, Inc*., 598 F.2d 1061, 1063 (7th Cir. 1979), and the inability to survive a

motion to dismiss, *Glick v. Koenig*, 766 F.2d 265, 268 (7th Cir. 1985)." *Garcia v. City of Chicago*, Ill., 24 F.3d 966, 970 (7th Cir. 1994). In this case, giving Plaintiff leave to amend would be futile. Plaintiff has been given numerous opportunities to file amended pleadings, all of them unsuccessful. In his Second Amended Complaint, Plaintiff brings the same conclusory allegations and fails to identify any facts suggesting a valid claim. *Pro se* plaintiffs are afforded great deference, but this Court is not required to allow them opportunities to amend *ad nauseam* where doing so would be futile. Accordingly, Plaintiff will not be given leave to amend, and this case will be dismissed with prejudice.

## Disposition

**IT IS HEREBY ORDERED** that the Second Amended Complaint (Doc. 29), and this action, are **DISMISSED** with prejudice for failure to state a claim upon which relief may be granted. Plaintiff is **ADVISED** that this dismissal shall count as one of his three allotted "strikes" under the provisions of 28 U.S.C. § 1915(g).

If Plaintiff wishes to appeal this Order, he may file a notice of appeal with this Court in accord with. FED. R. APP. 4(a). If Plaintiff does choose to appeal, he will be liable for the $505.00 appellate filing fee irrespective of the outcome of the appeal. *See* FED. R. APP. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-26 (7th Cir. 2008); *Sloan v. Lesza*, 181 F.3d 857, 858-59 (7th Cir. 1999); *Lucien v. Jockish*, 133 F.3d 464, 467 (7th Cir. 1998). Moreover, if the appeal is found to be nonmeritorious, Plaintiff may also incur another "strike." A proper and timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the 30-day appeal deadline. FED. R. APP. P. 4(a)(4). A Rule 59(e) motion must be filed no more than twenty-eight (28) days after the entry of the judgment, and this 28-day deadline cannot be extended.

The Clerk's Office is **DIRECTED** to close this case and enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED: August 23, 2018**

**s/J. Phil Gilbert**
**J. PHIL GILBERT**
**United States District Judge**
